## STATE V. SWEETLAND.

1. In a proceeding for a constructive contempt, the affidavit on which the proceedings is based is jurisdictional, and all the facts showing that the case is one over which the court has jurisdiction must be made to affirmatively appear by the affidavit.

2. It does not affirmatively appear by the affidavit on which the proceedings for contempt in the county court were based that the publication complained of was made pending the trial of the cause referred to in such publication; and it does not affirmatively appear by said affidavit that the article complained of was calculated to intimidate, influence, embarrass, or impede the court in the due administration of justice in any cause then pending, or to prevent a fair and impartial trial of the same. The court had no jurisdiction, therefore, to convict and punish the plaintiff in error for the alleged contempt.

(Syllabus by the Court. Opinion filed Feb. 15, 1893.)

Error to Hand county court. Hon. J. A. HUGHES, Judge.

Proceedings by the state against L. D. Sweetland for contempt of court. Defendant was adjudged guilty of contempt, and brings error. Reversed.

The facts are stated in the opinion.

*Shunk & Hughes,* for plaintiff in error.

The proceedings of a lower court in a contempt proceeding may be reversed by the superior court. 7 Cal. 176, 42 N. W. 598; 13 Neb. 445; 90 N. Y. 407; 46 Ohio St. 473; 20 Wall. 387; 13 Cal. 337; 18 Kan. 72; section 2, art. 5, Const. S. D.

*Robert Dollard, Attorney General,* for defendant in error.

A writ of error lies only in a criminal action. Section 7499, Comp. Laws. The proceedings for contempt is not an action within the meaning of the law, but a special proceeding. Section 4811, Comp. Laws. No appeal lies from a judgment for contempt. *Re* Vance, 88 Cal. 262; Currier v. Miller, 44 N. W. 555; Lamon v. McKee, Wash. (D. C.) L. 806; *Re* Deaton, 105 N. C. 59; Sanchez v. Newman, 70 Cal. 210; Baldwin v. Miles, 58 Conn. 496; Williamston v. Doyle, 71 Wis. 643; Hayes v. Fisher, 102 U. S. 121; New Orleans v. Steamship, 20 Wall. 387.

The regularity of such proceedings can be inquired into by the supreme court by *certiorari.* Com. v. Newton, 1 Grant, 453; Henneval's Case, 9 West. 416. The question of the lower court's juris-

diction will only be reviewed on appeal. Talman v. Jones, 114 Ill. 147; Cooper v. People, 6 L. R. A. 430. Power to punish for contempt is inherent in courts of superior jurisdiction. It is not regulated by statute alone. Holman v. State, 2 West. 761; *Re* Terry, 128 U. S. 289; *Re* Robinson, 86 U. S. 513; *Re* Cheseman, 49 N. J. L. 115. The publication of an article in a newspaper is a contempt, if it reflects upon the conduct of a court in reference to a pending suit and tends in some measure to influence its decision therein, or to impede, interrupt or embarrass the proceedings of the court in reference thereto. Cooper v. Colorado, 6 L. R. A. 430; Oregon v. Kaiser, 8 L. R. A. 584.

CORSON, J. This was a proceeding for contempt, resulting in the conviction and sentence of the plaintiff in error. The affidavit of J. A. Hughes, as the basis of this action, is as follows: "(1) That I am the county judge of Hand county, duly elected, qualified, and acting. That on the 14th, 15th, and 16th days of January, 1892, the county court in and for Hand county was in due and lawful session, and a criminal cause was pending in said court, and was on trial before me, entitled, 'The State of South Dakota vs. D. G. Butts,' charged with violating the quarantine law. I do further depose and say that at that time the said L. D. Sweetland was the editor and publisher of a newspaper published in the town of Miller, Hand county, South Dakota, and that an issue of said newspaper was published upon Friday, January 15th, 1892, or about that date. (2) That in said newspaper said L. D. Sweetland, with intent to slander the courts of this county and to bring the same into disrepute, and with intent to disregard the due and legal proceedings in courts of justice in this county and in this county court, and with intent to impair the respect due its authority, did in said newspaper publish the following article: (3) 'It was anarchy in the extreme when County Judge Hughes, in almost total disregard to law and all rules of practice, in the Butts Case, made the jurisprudence of the county of Hand look red with shame by his dishonest and fulsome rulings, and it was no less anarchistic that the little big lawyer from Beadle always advised it, and whose every "Simon says thumbs up" by him was announced. One of the crowning acts of tyranny on the part of Judge Hughes was

that of fining Counselor Pusey $10 for contempt of court, and shows the desperation to which the combine was driven to protect Lane in his regime of tyranny and outlawry. The Butts quarantine trial came for hearing before the self-declared, but self-demonstrated, unbiased (?) County Judge Hughes on last Tuesday, dragging heavily through three days and a night. It was the most notoriously disgusting farce ever perpetrated in the county.' (4) And I do further depose and say that the said publication is a false and grossly inaccurate one of the proceedings in said court, and which, on my best information and belief, I do allege that the said report was maliciously made with a view to entirely disrespect the authority of this court and of other courts in this county. This petition is filed as a basis for an order directing the said L. D. Sweetland to appear and show cause why he should not be punished for contempt of court. J. A. Hughes. Sworn to before me this 27th day of January, 1892. W. H. Smith, Clerk of Co. Court."

The errors assigned may be condensed and stated as follows: (1) That the said affidavit does not state facts sufficient to constitute a contempt over which said county court had jurisdiction; (2) that it does not appear from the said affidavit that the county court was in session, or the criminal case referred to was pending before the court, at the time of the alleged publication of the article referred to in the affidavit. A preliminary motion was made to dismiss the writ of error upon the ground that a judgment for a contempt cannot be brought to this court for review by such writ. This court has, however, decided in the case of State v. Knight, 54 N. W. Rep. 412, that a final judgment in proceedings for a criminal contempt may be brought to this court by such writ. Following the decision in that case, the motion to dismiss is denied.

The learned attorney general states the doctrine he contends for in this case as follows: "The publication of an article in a newspaper is a contempt if it reflect upon the conduct of a court in reference to a pending suit, and tends in some measure to influence its decision therein, or to impede, interrupt, or embarrass the proceedings of the court in reference thereto;" and he insists that the affidavit in this case brings the plaintiff in error within

the doctrine above stated. The learned counsel for the plaintiff in error do not controvert the doctrine above laid down as to such a publication constituting a contempt when made while a case is pending, but contend that the affidavit does not state facts that bring the plaintiff in error within the rule. The only question presented in this case, therefore, is, does the affidavit state facts sufficient to constitute a contempt over which the county court had jurisdiction? In other words, does it show that the publication complained of was made while the criminal case referred to was pending in court? It will not, therefore, be necessary to discuss the doctrine of contempts generally, as the attorney general has stated the doctrine held by the courts in recent decisions quite fairly, with the limitation upon the power of courts to punish, to publications calculated to intimidate, influence, impede, embarrass, or obstruct the courts in the due administration of justice in matters pending before them. This limitation upon the power of the courts is fully recognized in Myers v. State, (Ohio Sup.) 22 N. E. Rep. 43; Cooper v. People, 13 Colo. 337, 22 Pac. Rep. 790; Sturoc's Case, 48 N. H. 428; Storey v. People, 79 Ill. 50. The affidavit upon which the proceedings for a constructive contempt are based must state facts which, if established, would constitute an offense over which the court has jurisdiction. As was said by the supreme court of California: "The power of a court to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be upheld except under the circumstances and in the manner prescribed by law. It is essential to the validity of proceedings in contempt, subjecting a party to fine and imprisonment, that they should show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized, for mere presumptions and intendments are not to be indulged in their support." Batchelder v. Moore, 42 Cal. 412. See, also, to the same effect, McConnell v. State, 46 Ind. 298; Phillips v. Welch, 12 Nev. 158; Thomas v. People, 14 Colo. 254, 23 Pac. Rep. 326; Wyatt v. People, (Colo. Sup.) 28 Pac. Rep. 961. The affidavit, then, being jurisdictional in its nature, and no presumptions being permissible to sustain it, should clearly show a state of facts that gives

the court jurisdiction over the contempt proceedings. With these observations as to the nature of the proceeding, we will now examine the affidavit.

It will be noticed that the judge, in the affidavit in this case, states that on the 14th, 15th, and 16th days of January, 1892, the county court of Hand county was in session, and that a criminal case was pending before it; that the plaintiff in error was the editor and publisher of a newspaper at Miller, the county seat of said county, and that said newspaper containing the alleged libelous article was published on Friday, the 15th day of January, or about that date; but it is not otherwise stated that the article complained of was published during the pendency of the criminal prosecution referred to in the article, or that it was calculated to influence, intimidate, impede, or embarrass the court in such trial, or calculated to prevent a fair and impartial trial of the case. The article itself, set forth in the affidavit, would seem to clearly indicate that it was published after the conclusion of the trial, as it states therein that "the Butts quarantine trial came for hearing * * * on last Tuesday, dragging heavily through three days and a night." We are of the opinion, therefore, that the affidavit fails to show that the article complained of was published during the pendency of the prosecution, but, on the contrary, that it does appear from the article itself, which is made a part of the affidavit, that it was published after the conclusion of the trial. The attorney general, however, contends that, if it does not sufficiently appear from the affidavit that the publication was made during the pendency of the criminal action referred to, this court will presume that the evidence on the trial of the contempt established that fact. But, were it permissible in any case to make such a presumption, no such presumption would prevail in this case, as the minutes of the court, made a part of the record before us, give the entire proceedings, including all the evidence on which the judgment and sentence of the court were based. In the minutes of the court it is stated that the plaintiff in error appeared at 3:30 p. m., January 28, 1892, and the affidavit was read to him. That thereupon the following proceedings were had: "The court asked L. D. Sweetland, 'You published these articles, did you?' By Mr.

Sweetland: 'I did.' 'You are the publisher of the Gazette, are you?' 'Yes.' 'You knew, when you published these articles, you were in contempt, did you not?" Answer. 'I did not know that I was; not in the least. There was no intention that the articles published were contemptuous or disrespectful of the court, but for the purpose of vindicating the dignity of the courts.' Mr. Sweetland asked the court that he might have time to prepare answer and make defense, as at present he is wholly unprepared. The court said: 'I have nothing to do but to punish you for contempt, and then you have your remedy if you want it. Mr. Clerk, you may note down a fine of forty (40) dollars for Mr. Sweetland for contempt of court in accordance with the information read to him, and that he be committed to jail until the fine is paid for twenty days,—not to exceed twenty days,—one day for every two (2) dollars of the fine.' A commitment was issued for L. D. Sweetland to the county jail, and given to the sheriff,—to all of which proceedings, orders, and judgments the defendant excepts. Court adjourned until February 4th, 1892, to 2 p. m." A judgment for contempt was then rendered. From these proceedings it clearly appears that there was no other evidence than that stated before the court. Such being the case, the affidavit and proceedings failed to bring the plaintiff in error within the rule laid down, or to show that the article was published during the pendency of the trial, or was calculated to influence, intimidate, impede or embarrass the court in the trial of the criminal case, or to in any manner prevent a fair and impartial trial of the same. The publication was not, therefore, a contempt of the court over which the court had jurisdiction in contempt proceedings. The object of contempt proceedings is not to enable a judge, who deems himself aggrieved, to punish the supposed wrong-doer to gratify his own personal feelings, but to vindicate the dignity and independence of the court, and to protect himself, and those necessarily connected with it, while a matter is pending before it, from insolent and contemptuous abuse calculated to intimidate, influence, embarrass, or impede the court in the exercise of its judicial functions, or prevent a fair and impartial trial. If the judge was unjustly assailed by the article in question, he had the same, and only the same, remedies for

the redress of the wrong which belong to all other citizens. After the conclusion of a trial the right of the press, without fear of punishment by contempt proceedings, in the interest of the public good, to challenge the conduct of the judge, parties, jurors, or witnesses, and to arraign them at the bar of public opinion in connection with causes that have been fully determined, cannot be denied by a court in any other manner than by the ordinary proceedings in courts of justice. It would be a perversion of the salutary doctrines governing the proceedings of courts and its power to punish for contempts, to permit a judge to summon before him and punish by fine and imprisonment one who challenges his learning, integrity, or impartiality as a judge in a public newspaper, except when the interests of the state demand it, to vindicate the independence and integrity of the courts, and to protect them from publications directly calculated to embarrass, impede, intimidate, or influence them in the due administration of justice in proceedings pending before them. Other questions were argued, but, as the views we have expressed dispose of the case, it will not be necessary to discuss them on this appeal. The judgment of the county court of Hand county is reversed, and the court directed to dismiss the proceedings.