[Crim. No. 8125.  Second Dist., Div. One.  Aug. 30, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JERRY SERVILLO, Defendant and Appellant.

Harrison M. Dunham for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Phillip M. Rohlin, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery in the first degree.

Appellant (with two codefendants) was charged in an information with a violation of section 211, Penal Code, in that he, together with Leonard Dye and Neil Servillo, did on July 1, 1961, rob Vincent O'Connor (Bashford Liquors) of $197.25 in money; it was further charged that at the time of the commission of the offense said defendants were armed with a deadly weapon, namely a .32 caliber Colt automatic pistol. Leonard Dye pleaded guilty to robbery in the first degree and the court found that he was not personally armed

at the time of the commission of the offense. The two Servillos went to trial before a jury and each was convicted of robbery in the first degree and each was found to be armed at the time of the offense. At the hearing of appellant's motion for a new trial the trial judge denied the motion insofar as it concerned the charge of robbery in the first degree but granted the motion with reference to the charge of being armed at the time of the offense. Or, as appellant states it in his brief, ''. . . and the verdict of the jury as to the appellant being personally armed was dismissed by the Court on it's [*sic*] own motion.'' The trial judge granted the motion of Neil Servillo for a new trial and then upon his own motion dismissed the case entirely, even though the district attorney stated at the time, ''I am under the opinion that he [Neil Servillo] could be convicted on a jury trial ten days in a row, but I will submit the matter to the Court.''

Appellant's only contention is that the evidence is insufficient as a matter of law to support the verdict and judgment.

A résumé of some of the facts is as follows: O'Connor and his wife were in their liquor store located at 607 East Compton Boulevard in Compton, at about 11 p. m. on Saturday, July 1, 1961. Willow Street is immediately to the west of the liquor store running generally north and south and intersecting Compton Boulevard. Appellant was the manager of an apartment building (apparently in Eagle Rock) where he lived with his wife. David Gray and Leonard Dye lived in one of the apartments. Gray, Dye, Neil Servillo and appellant had been together on the evening of July 1. They left the apartment in an automobile (two-door Plymouth station wagon) which appellant had borrowed for use that night. Appellant was the driver. The automobile was driven to the Compton area by appellant to a point close by the O'Connor Liquor Store and apparently parked on Compton Boulevard. Gray entered the liquor store with a gun in his hand and ordered the owners to get behind the counter and to ''strip the register.'' During this time the gun was in sight and the owners did as directed and placed the money which was in the register, consisting of about $197.25, in a paper sack and handed it to Gray. In compliance with a demand from Gray the owners lay down on the floor behind the counter. The establishment apparently was wired with some sort of silent alarm system for use in such an emergency and an alarm did go out to the police of the robbery which was then and there taking place. Officer Pool and his partner, at or

about the time in question, were within a few blocks of the store in a marked police car with red lights and siren patrolling the streets. They received the alarm with reference to the robbery which was then taking place and proceeded at once to the area. As the police approached the store in the police car they saw a light-colored station wagon proceeding northward on Willow Street, without lights and accelerating rapidly. Willow Street at the area under consideration was narrow and poorly lighted. Appellant was driving the station wagon. When the pursuing officers had travelled about 100 feet on Willow Street the red light and spotlight of the police car were turned on. At this time the station wagon was less than three-quarters of a block away and travelling at a high rate of speed. As the station wagon neared Palmer Street, which runs generally in an east-west direction and intersects Willow Street, the officers turned on the siren in the police car. The station wagon thereupon skidded and turned to the right around the corner into Palmer Street and headed eastward. The station wagon travelled east on Palmer Street at a high rate of speed. At the intersection of Palmer Street and Santa Fe Street (which latter street is a multiple lane street and generally runs north and south) there was a flashing red signal light. Appellant drove the station wagon at a speed which caused it to skid as he turned to the right from Palmer to Santa Fe Street, and as he continued in a southerly direction on Santa Fe, he rapidly accelerated the speed of the station wagon. When the appellant approached the 200 block on Santa Fe Street he headed the station wagon for the curb and suddenly skidded to a stop. Another group of police officers apparently had received the alarm of the robbery and were proceeding to the scene from the south headed north in the southbound lanes of traffic on Santa Fe Street. The second police car was proceeding head-on into the station wagon and appellant driver of the station wagon took the course he did rather than to collide with the second police car. Immediately after the station wagon came to a stop the right front door thereof opened and Gray, who was seated in the right front, threw a paper sack and a gun out of the station wagon. The paper sack with the money in it was positively identified as being the sack and the money taken at the liquor store. The loaded gun was retrieved and O'Connor saw no dissimilarity between it and the gun which but a few minutes previously was in effect at his head in the hands of Gray.

When the station wagon stopped Gray, Neil Servillo and Dye jumped out and started to run across the parkway. However, upon a call from the officers who had drawn guns they stopped. Appellant was told to get out of the station wagon and he did so. The four men were then taken back to the liquor store where O'Connor identified Gray as the man who had come into the store with the gun in hand, and further identified the paper sack and the money which had been taken from him.

Appellant talked to some of the officers concerning what he was doing and why he was in the area. At the trial he took the witness stand and made several contradictory statements, and further stated that he had no idea he was being pursued by the police. He further stated that he told Gray to throw the gun down when Gray pointed it at one of the officers.

Under the circumstances of this case the jury was clearly entitled to believe that appellant was in the course of flight from an armed robbery, and that he was directly involved in it. This was no ordinary simple departure from a liquor store at 11 o'clock at night. Appellant was trying his best to outrun the police officers and failed in his efforts because of the alertness of the officers. It is difficult to imagine a course of conduct which would more clearly point up or indicate a guilty mind. (See *People* v. *Santora,* 51 Cal.App. 2d 707 [125 P.2d 606]; *People* v. *Flannelly,* 128 Cal. 83 [60 P. 670]; *People* v. *Lenahan,* 38 Cal.App.2d 39 [100 P.2d 515]; *People* v. *Campos,* 10 Cal.App.2d 310 [52 P.2d 251]. See also *People* v. *Spivak,* 166 Cal.App.2d 796, 811 [334 P.2d 44]; *People* v. *Gautt,* 190 Cal.App.2d 355, 357 [11 Cal.Rptr. 805].)

The falsehoods, deceptions, inconsistent and conflicting statements made by appellant as to matters relevant to the issues in the case showed definitely a consciousness of guilt. (See *People* v. *Smith,* 184 Cal.App.2d 606, 610 [7 Cal. Rptr. 607]; *People* v. *Stanley,* 162 Cal.App.2d 416, 420 [327 P.2d 973]; *People* v. *Peete,* 54 Cal.App. 333, 352-353 [202 P. 51].)

The jury apparently did not believe the appellant in what he told them with reference to the episode in question. It was the province of the jury to determine who was telling the truth.

*People* v. *Draper,* 69 Cal.App.2d 781 [160 P.2d 80], cited by the appellant as authority for his position is not in point under the circumstances of this case.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.